AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)          ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| **LODGED**<br>CLERK, U.S. DISTRICT COURT<br>**4/9/25**<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ MRV _____ DEPUTY | |

United States of America

        Plaintiff,

        v.

KENNETH MICHAEL HOLLEY JR., and
MELVIN LOVESTER RILEY,

        Defendant(s)

**FILED**
CLERK, U.S. DISTRICT COURT

**4/9/2025**

CENTRAL DISTRICT OF CALIFORNIA
BY:_____ clee _____ DEPUTY

Case No.  2:25-mj-02119-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

    I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

As described in the accompanying attachment, defendant violated the following statutes:

| *Code Sections* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery (Hobbs Act) |

This criminal complaint is based on these facts:

    *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Stephen J. May*
*Complainant's signature*

Stephen J. May, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:      April 9, 2025

City and state:  Los Angeles, California

_____
*Judge's signature*

Honorable Steve Kim, U.S. Magistrate Judge
*Printed name and title*

AUSA: Kelsey A. Stimson (x8230)

**AFFIDAVIT**

I, Stephen J. May, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for the past 26 years.  From September 1999 through December 2003, I primarily worked as a Bank Robbery Investigator in the San Francisco Division of the FBI.  From December 2003 to the present, I have worked as a Bank Robbery Investigator in the Los Angeles Division of the FBI.  From May 2005 to April 2024 (19 years), I was the Bank Robbery Coordinator for the Los Angeles Division of the FBI.

2.    As a Bank Robbery Investigator and prior Bank Robbery Coordinator, I investigate bank robbery cases assigned to me and review, analyze, and disseminate investigative data (including bank surveillance photographs) on nearly all bank robberies that occur in the Central District of California.  Since May 2005, there have been more than 3,500 bank robberies in the Central District of California.

3.    Since October 2013, I have also been the lead FBI agent for the San Gabriel Valley Violent Crime Task Force, which works in conjunction with Task Force Officers from the Los

Angeles County Sheriff's Department ("LASD") to investigate commercial and retail robberies.

4.    In connection with the bank robbery and commercial/retail robbery investigations in which I have participated, I have used a variety of investigative techniques, including witness interviews, speaking with law enforcement agents and officers, reviewing surveillance images and cellular telephone data, and reviewing physical evidence.  As a result of this experience and my conversations with other law enforcement personnel, including FBI SAs and local law enforcement detectives who were experienced with commercial robbery investigations, I am familiar with the methods used by individuals to commit commercial robberies as well as effective investigative methods used to solve them.

5.    Offenders who commit bank robberies often commit other crimes, including federal offenses, during the commission of or in relation to bank robberies such as discharging a weapon or kidnapping.  I have been trained on and involved in the investigation of these crimes as well.

## II. PURPOSE OF AFFIDAVIT

6.    This affidavit is made in support of a criminal complaint against and arrest warrants for KENNETH MICHAEL HOLLEY JR. ("HOLLEY") and MELVIN LOVESTER RILEY ("RILEY") for a violation of 18 U.S.C. § 1951(a) (Hobbs Act Robbery).

7.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

7.    LASD, the FBI, and other law enforcement agencies have been investigating a series of at least two related robberies that started no later than on or about February 5, 2025, and continued through at least on or about March 17, 2025.  In total, the robbers took $55,000 from the elderly victims.

8.    In each robbery, two Black male robbery suspects (collectively, "the robbers") approached the victim, one of the robbers entered the victim's vehicle while the second suspect followed in a separate vehicle, and the robbers then forced the victim to withdraw cash from a nearby bank, which the robbers took from the victim. As explained below, law enforcement has identified HOLLEY and RILEY as the suspected robbers based on

surveillance footage; rental car records for the vehicles used by the robbers during the robberies; hotel and retail records; and the victim's identification.

### IV. STATEMENT OF PROBABLE CAUSE

**A.    February 5, 2025: HOLLEY and RILEY Kidnapped and Robbed Elderly Victim L.F. of $35,000**

       1.    The Robbers Forced L.F. to Drive to Three Different Banks Withdrawing Money and Then Robbed Her of the Money

9.    Based on my review of a Culver City Police Department ("CCPD") report, I learned the following:

    a.    On February 11, 2025, victim L.F., aged 65 years old, filed with the Culver City Police Station a report of a robbery that occurred on February 5, 2025. L.F. told officers that L.F. had not reported the robbery sooner because she had been scared to leave her house after the robbery and felt embarrassed that she was a victim of a crime.

    b.    L.F. told officers that, on February 5, 2025, while she was at the Chase Bank at 5670 Sepulveda Boulevard, Culver City, a Black male suspect approached her, carrying a black and green shoulder bag. As discussed herein, the suspect was later identified by law enforcement as KENNETH HOLLEY ("HOLLEY"). HOLLEY asked for a ride to his church on Slauson Avenue. L.F. agreed and drove HOLLEY to the church, located at 5505 West Slauson Avenue, Los Angeles.

c.   After L.F. parked her car, HOLLEY asked if L.F. wanted to make money and told her that he would give her $90,000 in exchange for $40,000.  Before L.F. answered, HOLLEY called over a second Black male suspect who had parked nearby.  As discussed herein, the second suspect was later identified by law enforcement as MELVIN RILEY ("RILEY").  As RILEY approached L.F.'s vehicle and then stood by her passenger side window, L.F. saw that there appeared to be something heavy in the front pocket area of his jacket, which was pulling down the jacket and swaying back and forth as he walked.  L.F. believed that the weight in RILEY's jacket resembled a firearm.  Afraid for her safety, L.F. asked HOLLEY to exit her vehicle but he refused.

d.   HOLLEY told L.F. to withdraw money from another bank, that he was going to go with L.F. to get the money, and that RILEY was going to follow them in his own vehicle.  L.F. understood that she was in "trouble" and that the robbers were working together to take her money against her will.  Fearing for her safety, L.F. agreed to drive to another bank.  As L.F. drove to the bank, L.F. observed RILEY in a white sedan vehicle following behind L.F.'s vehicle.

e.   L.F. drove HOLLEY to Wescom Credit Union Bank, located at 10970 Jefferson Boulevard, Culver City.  At the bank, HOLLEY told L.F. where to park and then he and RILEY walked towards a nearby store to wait for L.F.  Afraid for her safety,

5

L.F. hoped that if she gave the robbers the money they demanded, they would release her and she could go for help.  Inside the bank, L.F. withdrew $5,000 in cash and a $15,000 cashier's check.[1]

  f. When L.F. returned to her vehicle, HOLLEY re-entered the passenger seat of L.F.'s vehicle.  L.F. had placed the money on the center console and when HOLLEY saw that L.F. had gotten a cashier's check, he got upset at L.F., demanding cash instead.  L.F. tried to take her money but HOLLEY slapped L.F.'s hand and grabbed the money.  HOLLEY then demanded that L.F. drive to another bank to cash the cashier's check.  L.F. told HOLLEY that she did not want any part of what was going on and HOLLEY became angry with her. L.F. also attempted to text a friend and HOLLEY yelled at L.F., becoming extremely angry with her for using her phone.  Afraid for her safety and against her will, L.F. complied with HOLLEY's demands to go to another bank.

  g. L.F. drove to Bank of America, located at 5541 Sepulveda Boulevard, Culver City, which she chose because she believed that the bank would not agree to cash the cashier's check.  RILEY continued to follow L.F. in the white sedan. HOLLEY told L.F. not to park in the parking lot at the bank and

---

[1] Based on my training and experience investigating Hobbs Act Robbery offenses, I am aware that banks generally conduct business in interstate commerce.  On or about April 9, 2025, I spoke with the Wescom Credit Union Bank Director of Physical Security, who confirmed that Wescom Credit Union Bank conducts business in interstate commerce.

to park at the business next door, El Pollo Loco, located at 5529 Sepulveda Boulevard, Culver City.  L.F. agreed and parked in the handicapped spot at El Pollo Loco.  When L.F. was entering the bank, she observed RILEY walking from across the street near a 7-Eleven, located at 5495 Sepulveda Boulevard, Culver City, and up to the passenger side of her vehicle where HOLLEY was still seated.

> h.    L.F. entered the Bank of America and cashed the cashier's check of $15,000 as the robbers had demanded.  L.F. considered giving the bank teller a note asking for help but she did not because she believed that the robbers would retaliate against her and that complying with the robbers' demands was the only thing that would keep her safe.  As L.F. walked back to her vehicle, she observed HOLLEY and RILEY walking back from the 7-Eleven parking lot. L.F. stated HOLLEY met her in her vehicle and told her that the money was not enough and that she needed to give the robbers another $20,000.  The robbers demanded that L.F. drive to her house to get the money.  L.F. said that she does not have any money at her house.  The robbers then demanded that L.F. go to another bank to withdraw more money.  L.F. was scared the robbers were going to harm her because of how aggressive the robbers' demands to withdraw money were when she would protest and because RILEY made hand movements in his

jacket near his waistband that made L.F. fear that RILEY had a
weapon on his person.

i.    HOLLEY and RILEY demanded that L.F. drive to
another Bank of America, located at 8949 South Sepulveda
Boulevard, Los Angeles, to withdraw more funds.  L.F. complied
in hopes that HOLLEY would leave her vehicle.  L.F. drove to the
Bank of America and when she arrived, RILEY got into her car as
well.  At the robbers' demands and against her will, L.F.
entered the bank and withdrew $15,000.  When she returned to her
vehicle, both robbers were still in her vehicle.  HOLLEY saw the
money that she had withdrawn and took it.  L.F. pleaded to both
robbers that she did not have any more money.  The robbers
exited L.F.'s vehicle and told her to drive around the block to
prove that she "trust[ed]" the robbers.  When L.F. drove away,
the robbers fled the location.

2.    <u>Based on Rental Car Records for the Robbers'
Vehicle, Surveillance Footage During the Robbery,
and L.F.'s Identification in a Line-Up, CCPD
Identified HOLLEY as One of the Robbers</u>

10.  Based on my review of a CCPD report, I learned the
following:

a.    CCPD Detective Preston used the times and
locations provided by L.F. as a reference to use the license
plate readers within Culver City to map out when and where L.F.
drove on the day of the robbery.

b.   Detective Preston located L.F.'s vehicle and a white sedan that was following closely behind L.F.'s vehicle ("Subject Vehicle 1").  The vehicle was a 2022 white Dodge Charger (California license plate 9FRR946), which, when its license plate was queried, returned to Enterprise Car Rentals.

c.   Detective Preston contacted Enterprise Car Rentals and inquired who rented Subject Vehicle 1 the day of the crime.  Enterprise provided the following information:

i.   KENNTH HOLLEY[2] (date of birth 8/10/1955)

ii.  Vehicle rented at 1944 S. Figueroa Avenue, Los Angeles, from February 3, 2025 to February 6, 2025.

iii. Listed phone number (510) 514-9250

iv.  Listed address of 325 East 52nd Street, Los Angeles, California, 90011.

11.  Detective Preston obtained surveillance videos from the following locations:

a.   The Chase Bank located at 5670 Sepulveda Boulevard, Culver City, where L.F. was first approached by the robbers, and

b.   El Pollo Loco, located at 5529 Sepulveda Boulevard, Culver City, where L.F. drove HOLLEY and, at the

_____

[2] The CCPD report has a typo in the spelling of "KENNTH."  I have conferred with CCPD and confirmed that the Enterprise records spelled HOLLEY's first name as "Kenneth."

9

robbers' demands, entered the nearby Bank of America and cashed the $15,000 cashier's check.

12.    On or about March 3, 2025, L.F. responded to the CCPD station for a photographic line, which included HOLLEY in the lineup.[3]  L.F. signed CCPD's "Photographic Identification Admonition" form.  However, L.F. appeared to misunderstand the admonishment to circle one subject and instead circled two subjects on the line up, one of which was HOLLEY in Position 2 and another person in Position 6.  On the form, which I have reviewed, L.F. wrote: "(2) I think this is the man who got in my car skin color and face a little twisted (6) skin color, jacket, beard.  (2) -90%  6-80%."

13.    On or about February 26, 2025, Detective Preston obtained an arrest warrant for HOLLEY from the Honorable Judge Melvin D. Sandvig.

      3.    <u>March 6, 2025: HOLLEY Was Arrested by CCPD and Released on Bond</u>

14.    Based on my review of a CCPD report, I learned the following:

      a.    On March 6, 2025, while CCPD was conducting surveillance in Gardena, CCPD positively identified and arrested HOLLEY.  When he was booked at the CCPD Jail, Detective Preston read HOLLEY his Miranda Rights and HOLLEY confirmed that he understood his rights. Detective Preston asked if HOLLEY knew

---

[3] The photo of HOLLEY used was HOLLEY's past booking photo.

why he was arrested and he stated he did not.  Detective Preston explained the events of the crime and HOLLEY shrugged his shoulders and stated he did not know what the Detective was talking about. HOLLEY denied knowledge of the robbery and of the other robber.

       b.    According to the Los Angeles County Released Form, I am aware that, on March 6, 2025, HOLLEY bonded out of the Los Angeles County jail and was released.

**B.    March 17, 2025: HOLLEY and RILEY Kidnapped and Robbed Elderly Victim M.R. of $20,000**

       1.    <u>Less Than Two Weeks After HOLLEY Was Released, He and RILEY Robbed Another Elderly Victim</u>

15.  Based on my review of the LASD Report and my conversations with LASD Detectives Yzabal and Balderrama, I learned the following:

       a.    On or about March 17, 2025, 80-year-old victim M.R. provided the following information:

          i.    M.R. told the deputies that, earlier that day on March 17, he was getting into his vehicle to leave Seafood City Supermarket, located at 131 W. Carson Street, Carson, when an older Black male suspect entered M.R.'s vehicle and told him to drive to M.R.'s bank and withdraw $20,000.[4]  Law

---

[4] According to the report, in his initial interview, M.R. told deputies that two older Black males got into his car.  In a second interview on the same day, M.R. said that the deputies who took the initial report had misunderstood M.R. and that the second robber had approached M.R. at the bank.

enforcement later identified this suspect as HOLLEY.[5]  M.R. was scared of HOLLEY and in fear for his life, so he complied with HOLLEY's demand.

ii.  M.R. drove to the Chase Bank at 20710 Avalon Boulevard, Carson.  At the robber's demand and against his will, M.R. entered the bank, and withdrew $20,000 from his savings account while HOLLEY waited outside.  M.R. said that he did not tell the bank manager to call the police when he was inside the bank because he was so scared he could not think.

b.  As M.R. exited the bank, he was approached by a second Black male suspect, later identified by law enforcement to be RILEY, as discussed herein.  RILEY told M.R., "My friend is waiting for you in your car, I thought you couldn't get the money."  M.R. said, "No I got the money" and continued to walk back to his vehicle where HOLLEY was waiting.  When M.R. entered his vehicle, HOLLEY got back inside and demanded that M.R. drive to the McDonalds at 130 W. Sepulveda Blvd.

c.  At the McDonalds, M.R. exited his vehicle and was approached by RILEY, who had followed behind M.R. to the McDonalds.  RILEY told M.R. that he was picking up HOLLEY to take him to the airport.  HOLLEY then took the withdrawn money

---

[5] Law enforcement identified HOLLEY in this second robbery based on Enterprise rental records in HOLLEY's name for the vehicle used by the robbers during the robbery and a comparison of surveillance footage of the robbers during the second robbery and the first robbery.

from M.R.'s presence and the robbers fled.[6]  M.R. didn't know where the robbers went afterwards.  M.R. said that he's old and was so scared by the robbers' demands that he couldn't think.

>    2.  Based on Surveillance Footage, Hotel Records, and Proof of Identification Offered at a Dispensary, the Second Robber Is Identified as MELVIN RILEY

16.  Based on my review of an LASD Report, I learned the following:

a.  On March 18, 2025, LASD Detective Maciel reviewed footage from a surveillance camera at 130 W. Sepulveda Blvd and identified a vehicle ("Subject Vehicle 2") that was captured on a license plate reader following the victim's vehicle, Carson. Through department resources, Detective Maciel identified Subject Vehicle 2 as a gold Chevy Malibu, license plate Nevada #702X78.  Department resources also indicated that Subject Vehicle 2 is a rental car registered to "EAN Holdings" out of Tulsa, Oklahoma.

b.  On March 18, 2025, LASD Detective Balderrama applied for a search warrant to Enterprise Car Rental for the rental contract information and Global Positioning System ("GPS") tracking for Subject Vehicle 2 registered to EAN Holdings.  The warrant was signed and approved by the Honorable Judge Margaret Bernal of Norwalk Superior Court.

---

[6] According to Detectives Balderama and Yzabal, M.R. said in an initial interview that the withdrawn money was taken from out of his hands.  In a second interview, he said that the money was taken from the car where he had placed it after withdrawing it.

c.   The rental contract information produced by Enterprise Car Rental in response to that search warrant stated that Subject Vehicle 2 said Subject Vehicle 2 was rented on March 17, 2025, at 9:06 a.m. with a return date of March 22, 2025, and rented to KENNETH HOLLEY, date of birth August 10, 1955, with a listed residence address of 325 E. 52nd Street Los Angeles.  The phone numbers provided were (510) 514-9250 and (323) 557-4099.

d.   On March 18, 2025, LASD Detective Cisneros presented a six-person photographic lineup to M.R.  M.R. stated he was unable to identify anyone in the pictures because he was very nervous during the robbery.

e.   On March 19, 2025, Detective Balderrama received the GPS tracking information from Subject Vehicle 2.  The GPS tracking showed Subject Vehicle 2 at Seafood City at 131 W. Carston Street in Carson, California, where M.R. stated he had been approached by the robber (HOLLEY) who entered M.R.'s vehicle; then near the Chase Bank at 20710 Avalon Blvd, Carson, where M.R. withdrew $20,000; and then at the McDonald's at 130 W. Sepulveda Blvd, Carson, where the robbers took M.R.'s money. The GPS tracking showed that Subject Vehicle 2 continued afterwards on that same day to The Artist Tree Weed Dispensary, located at 4756 W. Imperial Hwy in Inglewood, and then to a

Holiday Inn Express, located at 11436 Hawthorne Blvd in
Hawthorne.

       f.   On March 20, 2025, Detectives Balderrama and
Yzabal drove to the dispensary and Holiday Inn locations.

       i.   At the Artist Tree Weed Dispensary, the
detectives reviewed surveillance footage from March 17, 2025,
which showed Subject Vehicle 2 parking in the parking lot of the
Dispensary at 1:45 p.m.  The video showed RILEY exited from the
front driver's seat and walked into the dispensary.
Surveillance footage inside the dispensary showed RILEY
approached the purchase counter and presented his
identification, which stated, "MELVIN LOVESTER RILEY," with a
date of birth of October 2, 1951, and California Driver's
License number BS140272.  RILEY made a $60 purchase and paid
with a $100 bill.

       ii.   At the Holiday Inn Express location, the
detectives reviewed surveillance footage from March 17, 2025,
that showed Subject Vehicle 2 parked in the parking lot at 3:15
p.m., both HOLLEY and RILEY exited Subject Vehicle 2 and entered
the hotel.  HOLLEY and RILEY were wearing clothing consistent
with the clothing worn by the robbers during the robbery earlier
that day based on a comparison of surveillance footage at the
hotel with surveillance footage at the McDonald's and Chase
Bank.  Hotel records showed that RILEY rented a room for one

night for himself.  According to surveillance, HOLLEY left RILEY at the hotel and subsequently drove away by himself.

17.  Law enforcement identified RILEY as the second robber during the February 5, 2025, robbery of L.F. based on a comparison of surveillance footage of the robbers during the two robberies.

**C.    RILEY and HOLLEY Are Arrested and Law Enforcement Found that HOLLEY Had a Large Sum of $100 Bills and Access to Multiple Firearms, Including One Firearm Hidden in His Residence that Law Enforcement Has Not Yet Recovered**

18.  On or about April 03, 2025, I learned from Detective Yzabal that HOLLEY had rented a new Enterprise rental car ("Subject Vehicle 3") based on ongoing surveillance being conducted at 13404 Wilkie Avenue, Gardena, California, which is HOLLEY's residence.  Subject Vehicle 3 is a 2023 gray Nissan Altima.  Given that HOLLEY had obtained a rental car in preparation for each of the prior two robberies, a California State Arrest Warrant was obtained by Detective Balderrama.

19.  I am aware from Detective Yzabal that, on April 3, 2025, HOLLEY was driving Subject Vehicle 3 and was stopped and detained by the Hawthorne Police Department until he was subsequently arrested by LASD.

a.    Detectives Yzabal and Balderrama interviewed HOLLEY.  After being read his Miranda Rights and waiving those rights, HOLLEY provided the following information:

i.    HOLLEY conceded that he had rented Subject Vehicle 2 on March 17, 2025, and identified himself in the Enterprise surveillance footage recovered by law enforcement.

ii.    HOLLEY identified himself in the recovered surveillance footage of the McDonalds parking lot during the robbery of M.R. but stated that he did not remember what had happened that day.

iii. HOLLEY stated that he did not know who the other person (RILEY) was in the recovered surveillance.

b.    Pursuit to a vehicle inventory search, law enforcement found in the trunk of Subject Vehicle 3 two bags containing a large sum of $100 bills.

c.    Pursuant to a search warrant for HOLLEY's residence, located at 13404 Wilkie Avenue, Gardena, authorized by the Honorable Margaret M. Bernal, Los Angeles Superior Court Judge, law enforcement recovered three handguns, two of which were in HOLLEY's bedroom – one in a dresser and one underneath the nightstand – and a third that was located in a locked drawer, for which the girlfriend, A.C., had the key.

d.    I learned from Detectives Yzabal and Balderrama of a jail call made by HOLLEY on 04/07/2025 while detained at Men's Central Jail to a person that, based on the context, appeared to be his girlfriend, A.C., at a certain phone number ending in 4099.  In that phone call, A.C. said, "Where's the G

17

at?" and then clarified "the bang bang."  In Detective

Balderama's training and experience, a "bang bang" refers to a

firearm.  In the phone call, HOLLEY then guided A.C. to an item

that was hidden and then directed A.C. to give the item to a

third-party.  Based on Detective Balderama's training and

experience and knowledge of the investigation, HOLLEY appeared

to be guiding A.C. to a firearm that law enforcement had failed

to find during the search of their residence and attempting to

evade law enforcement finding the firearm.

20.  On or about April 8, 2025, I learned from Detective

Yzabal that RILEY had been arrested on April 7, 2025, by

California Highway Patrol for Kidnapping and Robbery at his

residence in or around Antioch, California.

### D. Both HOLLEY and RILEY Have Extensive Criminal Histories, Including Prior Felony Convictions for Theft, Burglary, and Robbery

21.  I have reviewed the prior criminal convictions for

both RILEY and HOLLEY and learned the following:

a.  RILEY's felony convictions included:

i.  On or about March 8, 1993, felony conviction

for Grand Theft: Property, in violation of California Penal Code

§ 487.1, California Superior Court in Solano County, Case No.

C34427, for which he received a sentence of 3 years in prison;

ii.  April 27, 1984, felony conviction for

Conspiracy: Defraud Person, in violation of California Penal

Code 182.4, California Superior Court in Solano County, Case No.
17549, for which he received a sentence of 2 years in prison;
and

   iii. On or about July 23, 1981, felony conviction
for Robbery in violation of California Penal Code 211,
California Superior Court in Alameda County, Case No. 72446, for
which he received a sentence of 5 years in prison.

   b. HOLLEY's felony convictions included:

   i. On or about October 13, 2020, felony
conviction for Grand Theft, in violation of California Penal
Code § 487(a), California Superior Court in San Jose County,
Case No. CR-2019-0008540, for which he received a sentence of 2
years in prison;

   ii. On or about December 15, 2014, felony
conviction for Possession/Purchase of Cocaine Base for Sale, in
violation of California Health and Safety Code § 11351.5,
California Superior Court in Los Angeles County, Case No.
XCNBA41540101, for which he received a sentence of 6 years in
prison;

   iii. On or about August 18, 2003, felony
conviction for Burglary, in violation of California Penal Code
§ 459, California Superior Court in Los Angeles County, Case No.
XSEVA07607101, for which he received a sentence of 1 year in
jail and 5 years' probation; and

iv.   On or about November 7, 1995, felony conviction for Grand Theft, in violation of California Penal Code § 487(a), California Superior Court for the County of San Bernardino Case Number FSB08942, for which he received a sentence of 2 years in prison.

## V.   CONCLUSION

22.   For all the reasons described above, there is probable cause to believe that HOLLEY and RILEY have violated 18 U.S.C. § 1951 (Hobbs Act Robbery) on or about March 17, 2025, and request a criminal complaint for Hobbs Act Robbery be lodged against them and arrest warrants be issued for both HOLLEY and RILEY.

/s/
_____
Stephen J. May, Special Agent
Federal Bureau of
Investigation

Subscribed to and sworn before me this  8th  day of April, 2025.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE